1    Philip Christian Bikle

2    1616 South Varna Street

3    Anaheim, California [92804]

4    Phone: (301) 802-9953

5    Plaintiff in Pro Per

6

7

8                 United States District Court

9             Central District Court of California

10                  Southern Division

11

12    Philip C. Bikle               ) Case No.: SACV13-01662-DOC(JPR)

13          Plaintiff,            ) **COMPLAINT**

14    v                                   ) **42 U.S.C. § 1983 & § 1985(3)**

15    Officer A. Santos, in his individual capacity;    )

16    Officer Cathy Hayes, in her individual capacity;    ) **JURY TRIAL DEMANDED**

17    Doe1-2, in individual capacities;           )

18    Los Angeles Sheriff's Department;         )

19    Los Angeles County;                 )

20    City of Lakewood in Los Angeles County;    )

21             Defendants               )

22

23

24

25

26

27

28

FILED

2013 OCT 23 PM 2: 39

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

Clerk, US District Court
COURT 4612

OCT 23 2013

PAID

# COMPLAINT

Now comes the PLAINTIFF, Philip Christian Bikle, who requests a preventive injunction against the Defendants to halt on-going wrongs against the public in Los Angeles County and who sues the Defendants for money damages and who states:

## SUMMARY OF THE ACTION

1. The Plaintiff was presented with false information, under fraudulent pretenses, and bad faith and Plaintiff was deprived of his Due Process Rights and Equal Protection of the laws by employees of Los Angeles County and the Los Angeles County Sheriff's Department. These employees are engaging in an on-going and systematic deprivation of the rights of members of the public residing in, and passing through, said county.

2. This action arises after Plaintiff's claims for damages were denied, even though the "alleged charges" against him were dismissed by Court Order, and the Los Angeles County office of RISK Management failed to acknowledge the blatant violations of the Plaintiff's rights, which the Plaintiff has since discovered, via public records, extends to unlawful policies enforced against general members of the public who have been accused of alleged traffic violations by LASD officers.

## JURISDICTION & VENUE

3. This is an action at law under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges and immunities secured to the Plaintiff by the Constitution of the United States.

4. The venue is proper pursuant to 28 U.S.C. § 1391(b), as all of the parties live, or operate, within this district.

5. All acts necessary or precedent to the bringing of this lawsuit occurred or accrued in Los

Angeles County, California. The time provided for in the statute of limitations for filing personal damages has not expired. The aforementioned acts have had significant effects in California.

6.     Plaintiff brings this action pursuant to 42 U.S.C. §1983, §1985(3), and §1986 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and this jurisdiction is founded upon 28 U.S.C. § 1331 and § 1343(a) (3) and (4).

## INTRADISTRICT ASSIGNMENT

7.     The entirety of the events complained of herein occurred in Los Angeles County, California, and this action is properly assigned to the Los Angeles Division of the United States District Court for the Central District of California.

## PARTIES

8.     The Plaintiff, Philip Christian Bikle, lives in the city of Anaheim, in Orange County, California.

9.     Does 1 through 3 are employed at the Los Angeles Sheriff's Department in the County of Los Angeles, State of California.

10.    Officer A. Santos is employed at the Los Angeles Sheriff's Department in the County of Los Angeles, State of California.

11.    Officer Cathy Hayes is employed at the Los Angeles Sheriff's Department in the County of Los Angeles, State of California.

12.    The Los Angeles Sheriff's Department is a municipality located in the County of Los Angeles, State of California.

13.    The County of Los Angeles is a political subdivision of the State of California.

14.    The City of Lakewood is a municipality located in the County of Los Angeles, State of California.

**General factual allegations**

15. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1 through 3, inclusive, and therefore sues Defendants by such fictitious names and will seek leave of this court to insert true names and capacities once they have been determined.

16. On October 24, 2011, in between 7:33 pm. and 7:49 pm., in Hawaiian Gardens, Plaintiff Bikle was involved in an automobile collision with Tony Hyunh in the private parking lot at the Hawaiian Gardens Casino.

17. The City of Lakewood, in the County of Los Angeles, branch of the Los Angeles Sheriff's Department (LASD) was contacted by Hyunh to report the collision.

18. Plaintiff was not under the influence of alcoholic beverages or any drugs.

19. At 9:30 pm., Officer A. Santos, Badge number 520780 arrived on the scene of the collision.

20. Santos asked Tony and the Plaintiff what had happened. We both responded and Santos stopped me and told me to go stay by the truck.

21. At this point, I perceived myself to be under arrest and I was not free to go.

22. Santos spend 10-15 minutes with Tony and then Santos came to me.

23. Tony left the scene.

24. Santos asked what happened. I described the circumstances of the collision. He asked if I had a driver's license and I told him no. He asked, why?

25. I told him that I wasn't engaged in commerce transporting persons or property for hire, which invoked the statutory obligations of a license.

26. He asked if I had insurance.

27. I told him no, because it was only required of those engaged in commercial activities.

28. He told me to, "stay right here". He returned to his car.

29. I sat down to rest a chronic leg injury. Santos came back and copied the VIN number off of the door closest to the steering wheel. He returned to his car. Santos returned with a

1    Notice to Appear (NTA) claiming no driver's license and no proof of financial

2    responsibility violations.

3    30.  The NTA had a number, written by Santos, in the driver's license box, although I did not

4         have a driver's license.

5    31.  The NTA had a box with the title, "Vehicle License Number or VIN". In that box Santos

6         wrote the number "4U07433". This is not the VIN on the door panel, which is,

7         "1FTEX14H1PKA12440".

8    32.  The truck did not have any California License plates affixed to it. Instead, it had plates, in

9         the colors red, white, and blue, with the word, "WITTMEIER".

10   33.  The NTA had the name "KNUDSEN MARK" in the "registered owner or Lessee" box.

11   34.  The automobile is my personal property, which I purchased, in cash before the encounter

12        with Santos. There were no liens or interested parties when it was transferred to me for

13        cash. At the time Santos wrote the citation, I had absolute ownership of this personal

14        property pursuant to California Civil Code 679.

15   35.  The personal property was not registered, by me, with the California Department of

16        Motor Vehicles.

17   36.  The NTA had the following statement, "Violations not committed in my presence,

18        declared on information and belief.", with a box next to it, which was not checked by

19        Santos.

20   37.  I signed the NTA under duress, indicating such on it, because if I did not sign it, I would

21        be taken into custodial arrest.

22   38.  Santos gave Plaintiff a copy of the NTA. Santos told me that if he saw me in the truck, on

23        the road, that I would be arrested and the truck towed. He asked me if I had a way home.

24        I told him I had a family member that could get me.

25   39.  Santos asked me to describe again for him what I said earlier about driving licenses. I

26        repeated for him what I said, as earlier described. Santos then told me that there were

27        laws for a reason and that people needed to follow them. He then left.

28   40.  On November 3, 2011 Officer Santos utilized the United States Postal Service (USPS)to

          mail a document titled, "NOTICE OF CORRECTION AND PROOF OF SERVICE" to

                                            Complaint                          5

me. Officer Santos invoked the name of the People of the State of California on the Notice of Correction such that it appeared prosecution had been initiated against Plaintiff Bikle.

41. On December 15, 2011 Officer Cathy Hayes utilized the USPS to mail a document titled, "NOTICE OF CORRECTION AND PROOF OF SERVICE" to Plaintiff. Officer Hayes invoked the name of the People of the State of California on the Notice of Correction such that it appeared prosecution had been initiated against Plaintiff Bikle.

42. On January 10, 2012 Officer Cathy Hayes utilized the USPS to mail a document titled, "NOTICE OF CORRECTION AND PROOF OF SERVICE" to Plaintiff. Officer Hayes invoked the name of the People of the State of California on the Notice of Correction such that it appeared prosecution had been initiated against Plaintiff Bikle.

43. An LASD employee, Doe1, altered the notice to appear, on a date yet to be determined, but certainly after Bikle was issued a carbon copy by Santos, by stamping it with the following, "TRAFFIC COLLISION". The copy of the notice to appear that was filed with the court contained allegations which were not contained in the duplicate given to Bikle.

44. An LASD employee, Doe2, filed the Notice To Appear #Y214682, with the Superior Court of California at Bellflower, pursuant to LASD polices, hereafter described by Sergeant Suarez and written within the LASD Manual of Policy and Procedures volume 5 chapter 7, titled "Judicial Process", section 020.00, titled "OBTAINING OF FELONY AND MISDEMEANOR COMPLAINTS" and section 150.05, titled "DISTRIBUTION, FILING, AND DESTRUCTION OF CITATION COPIES".

45. Upon filing the NTA with the Superior Court of California at Bellflower a case was created against Bikle.

46. The notice to appear was signed by Officer A. Santos, of the Los Angeles Sheriff's Department, at Lakewood Station.

47. Officer Santos is not licensed to practice law.

48. On April 25, 2012 Document #2001, an informal request for discovery to the District Attorney's office at Bellflower, was delivered via USPS (Delivery confirmation receipt #03102640000013550554).

49. On May 11, 2012 Document #2002, an informal request for discovery, was hand delivered to the District Attorney's Office at Bellflower.

50. On June 27, 2012 Document #1007v1.001, was mailed to the Bellflower District Attorney's office (Delivery confirmation receipt #70101870000123965129).

51. On June 29, 2012 Document #2003, a third informal request for discovery to the District Attorney's office at Bellflower, was delivered via United States Postal Service(USPS) (Delivery confirmation receipt #70111150000130464075).

52. On July 10, 2012 Bikle mailed a request for discovery materials to Santos via USPS Certified Mail receipt # <>. Bikle did not get a response.

53. On July 18, 2012 Document #2006, a fourth informal request for discovery to the District Attorney's office at Bellflower, was delivered via United States Postal Service (USPS) (Delivery confirmation receipt #70111150000130464112).

54. On July 27, 2012 Document #1007, a notice of a motion to compel discovery was served on the District Attorney's office at Bellflower via USPS (Delivery confirmation receipt #70101870000123965136).

55. Bikle made numerous attempts to terminate the court proceedings all of which consumed massive quantities of his time.

56. On October 2, 2012 a distinctly different Document #2010 was sent to Sheriff Leroy Baca to clarify the LASD policies with processing traffic citations.

57. On October 23, 2012, as I was en route to hand deliver my claim with the appropriate government office, Sergeant Suarez from Lakewood Station contacted me about my inquiry regarding policies for the handling of Notices to Appear. He said the District Attorney is not involved at all in traffic matters. He said the arresting officer sends the Notice To Appear (NTA) to traffic investigators. The traffic investigators make a copy of the NTA and send the copy to the court.

Complaint                                                                                            7

1

2   COUNT I:    CLAIM OF PHILIP BIKLE AGAINST DEFENDANT OFFICER

3               SANTOS FOR VIOLATION OF THE PLAINTIFF'S FOURTH

4               AMENDMENT RIGHTS (UNLAWFUL SEARCH AND FALSE

5               ARREST)

6

7   58.   Plaintiff re-alleges and restates paragraphs 1 through 56 as if fully set forth herein.

8   59.   On October 24, 2011, while acting under the color of state and local law, the Defendant

9         Officer Santos knowingly deprived plaintiff of his 4th Amendment rights by falsely

10        arresting Plaintiff in order to issue knowingly a falsified police report, by charging

11        Plaintiff with the crime of driving with out a license and the public offense of failure to

12        provide evidence of financial responsibility. Furthermore, Officer Santos required

13        Plaintiff to provide a thumbprint, even though Plaintiff had provided his United States

14        Passport as a form of identification equivalent to a driver's license (see Venegas v.

15        County of Los Angeles (2002)). In addition, Officer Santos searched the inside door

16        panel of Plaintiff's truck for the VIN with out probable cause to believe that the personal

17        property belonged to any one other than the Plaintiff. This VIN was then used to

18        perform additional searches via computer databases.

19  60.   Plaintiff has never engaged in the business of transporting persons or property for hire,

20        otherwise known as operating a motor vehicle. Plaintiff had obtained a driver's license

21        from the California Department of Motor Vehicles (DMV) with out the understanding

22        that the DMV regulated the business of transportation upon the right-of-ways. Plaintiff

23        allowed the license to expire upon learning the following about California Vehicle Code

24        (CVC) 12500.  California Vehicle Code 12500 states in part:

25

26              "(a) A person may not drive a motor vehicle upon a highway, unless the

27              person then holds a valid driver's license issued under this code, except

28              those persons who are expressly exempted under this code."

The term "driver's license" as defined in the CVC today, was amended in 1971 to read:

> "310. A "driver's license" is a valid license to drive the type of motor vehicle or combination of vehicles for which a person is licensed under this code or by a foreign jurisdiction."

Prior to this the term was amended in 1963 of the CVC to read:

> ""Driver's License" is a valid license to drive the type of motor vehicle or combination of vehicles for which a person is licensed under this code".

Prior to this the term was amended in 1961 of the CVC to read:

> ""Driver's license" is a license to drive the type of motor vehicle or combination of vehicles for which a person is licensed under this code"

In 1959 this term was defined in the CVC, after the Vehicle Code had been repealed and then re-enacted, to read:

> ""Driver's license" includes both an operator's and a chauffer's license."

The CVC clearly stated in 1959 the following with regards to the repeal and re-enactment of the CVC:

> "2. The provisions of this code, insofar as they are substantially the same as existing provisions relating to the same subject matter, shall be construed as restatements and continuations thereof and not as new enactments."

The California legislature has defined the term "operator" in the 1955 act to amend the Revenue and Taxation Code, relating to the motor vehicle transportation license tax, to read as follows:

"9603. "Operator" includes:

(a) Any person engaging in the transportation of persons or property for hire or compensation by or upon a motor vehicle upon any public highway in this State, either directly or indirectly.

(b) Any person who for compensation furnishes any motor vehicle for the transportation of persons or property under a lease or rental agreement when such person operates the motor vehicle furnished or exercises any control of, or assumes any responsibility for the operation of the vehicle irrespective of whether the vehicle is driven by such person or the person to whom the vehicle is furnished, or engages either in whole or in part in, the transportation of persons or property in the motor vehicle furnished.

**"Operator" does not include any of the following:**

**(a) Any person transporting his own property in a motor vehicle owned or operated by him unless he makes a specific charge for the transportation. This subdivision does not in any way limit any other exemption granted by this section.**

(b) Any farmer, resident of this State, who occasionally transports property for other farmers, or who transports his own farm products, or who transports laborers to and from farm work incidentally in his farming operations.

(c) Any nonprofit agricultural cooperative association, organized and acting within the scope of its powers under Chapter 4 of Division 6 of the Agricultural Code, to the extent only that it is engaged in the transporting of its own property or the property of its members.

(d) Any person whose sole transportation of persons or property for hire or

compensation consists of the transportation of children to or from any
public or nonprofit private school and whose total compensation from all
sources for providing such transportation does not exceed one hundred
dollars ($100) in any calendar month.

(e) Any person engaged in the business of operating a hearse or other
vehicle in a procession to a burial ground or place of interment and from
the burial ground or place of interment to a garage or place of storage.

(f) Any registered owner of a pleasure vehicle who, while operating the
vehicle, transports persons to his work or to a place through which he
passes on the way to his work, whether for or ·without compensation, if he
is not in the business of furnishing such transportation.

(g) Any person engaged in the business of collecting and disposing of
garbage, rubbish or waste, and who transports any such matter in a motor
vehicle owned or operated by him, unless he makes a separate or specific
charge for transportation. It is hereby declared that any such business is
one substantially affecting the public health and ·welfare."

61. Plaintiff was not a member of the class of persons who engage in the business of transportation and who are thereby subject to California Vehicle Code 12500 who are required to hold a driver's license to operate a motor vehicle. In the California Supreme Court case of In Re Stork (1914), which has never been over turned, the court clearly distinguished two classes of persons: Those who do no engage in the business of transportation and travel via automobile as a matter of right, which does not require an operator's license versus the class of persons who operate a motor vehicle as a matter of business on the right-of-ways, transporting persons or property for hire, which requires an operator's license to engage in the privilege. The phrasing of the CVC 12500 statute does not mean any person in the State of California, but refers to the class of persons dealt with by the statute-- those who engage in the business of transportation-- and one not in that class is not subject to the penalties prescribed by the statute. This issue of

dealing with the application of statutes to a target class was discussed at length in  United States v. Jin Fuey Moy, 241 U.S. 394. There was no evidence providing Defendant Officer Santos probable cause to believe that the Plaintiff was engaged in the privileged activity of transporting persons or property for hire via motor vehicle.

62.   Plaintiff did not use a motor vehicle subject to vehicle registration. The automobile which Plaintiff was using was not required to be registered. The California Vehicle Code 260 describes the type of motor vehicle which is required to be registered as follows:

> "260.  (a) A "commercial vehicle" is a motor vehicle of a type required to be registered under this code used or maintained for the transportation of persons for hire, compensation, or profit or designed, used, or maintained primarily for the transportation of property.
>
> (b) Passenger vehicles and house cars that are not used for the transportation of persons for hire, compensation, or profit are not commercial vehicles. This subdivision shall not apply to Chapter 4 (commencing with Section 6700) of Division 3.
>
> (c) Any vanpool vehicle is not a commercial vehicle.
>
> (d) The definition of a commercial vehicle in this section does not apply to Chapter 7 (commencing with Section 15200) of Division 6."

The automobile of the Plaintiff constitutes personal property/consumer goods, based upon it's non-commercial usage. Plaintiff was not subject to California Vehicle Code 16028 (c):

> "If a peace officer, or a regularly employed and salaried employee of a city or county who has been trained as a traffic collision investigator, is summoned to the scene of an accident described in **Section 16000**, the driver of a motor vehicle that is in any manner involved in the accident shall furnish written evidence of financial responsibility or may provide electronic verification of evidence of financial responsibility using a mobile electronic device upon the request of the peace officer or traffic collision investigator. If the driver fails to provide evidence of financial

responsibility when requested, the peace officer may issue the driver a notice to appear for violation of this subdivision. A traffic collision investigator may cause a notice to appear to be issued for a violation of this subdivision, upon review of that citation by a peace officer."

California Vehicle Code 16000:

"(a) The driver of a motor vehicle who is in any manner involved in an accident originating from the **operation of the motor vehicle** on a street or highway, or **is involved in a reportable off-highway accident**, as defined in **Section 16000.1**, that has resulted in damage to the property of any one person in excess of seven hundred fifty dollars ($750), or in bodily injury, or in the death of any person shall report the accident, within 10 days after the accident, either personally or through an insurance agent, broker, or legal representative, on a form approved by the department, to the office of the department at Sacramento, subject to this chapter. The driver shall identify on the form, by name and current residence address, if available, any person involved in the accident complaining of bodily injury."

California Vehicle Code 16000.1:

"(a) For purposes of this division, a "reportable off-highway accident" means an accident which includes all of the following:

(1) Occurs off the street or highway.

(2) **Involves a vehicle that is subject to registration under this code.**

(3) Results in damages to the property of any one person in excess of seven hundred fifty dollars ($750) or in bodily injury or in the death of any person."

The personal property was not registered, or subject to registration.

63.     As a direct result of the Defendant Officer Santos falsely arresting and searching the Plaintiff's property, Plaintiff was caused to suffer the following injuries and damages:

    (a) Physical pain and suffering, including but not limited to exacerbation of preexisting conditions;

    (b) Emotional pain and suffering,including but not limited to stress and anxiety;

    (c) A substantial loss of the enjoyment of life;

    (d) humiliation;

    (e) impairment of relationships;

    (f) Insomnia and nightmares;

    (g) Chronic headaches;

    (h) Development of fears and phobias;

64.     The Officer violated the well established laws regarding searches, seizures, and the business of transportation.

**COUNT II:     CLAIM OF PHILIP BIKLE AGAINST DEFENDANT OFFICER SANTOS FOR VIOLATION OF THE PLAINTIFF'S 4th AMENDMENT RIGHTS PURSUANT TO 42 U.S.C. SECTION 1983**

65.     Plaintiff re-alleges and restates paragraphs 1 through 62 as if fully set forth herein.

66.     At the time that he was arrested, Plaintiff Philip Bikle had the Constitutional Rights, pursuant to 42 U.S.C. 1983 and the 4th Amendment to the United States Constitution, to be free from arrest without probable cause. This right was a clearly established right at the time that the plaintiff was arrested.

67.     On October 24, 2011, while acting under color of state law, the Defendant Officer committed acts which constituted causing the arrest of the Plaintiff and illegal seizure by requiring Plaintiff to provide a thumbprint, by searching Plaintiff's truck, and by performing additional searches via computer databases without probable cause to believe that Plaintiff had committed crimes.

Complaint                                                      14

68. The Officer therefore violated the clearly established Fourth Amendment right of the plaintiff against unreasonable search and seizure. The Acts of the Defendant officer constituted false arrest and unlawful searches and violated the clearly established right of the Plaintiff against unreasonable acts of the Police, including false arrest and unlawful searches, which are protected by the Fourth Amendment. The laws regarding the business of transportation were clearly established at the time of these violations of the Plaintiff's rights.

69. The Officer's actions are the result of the custom, policy and practice of failing to properly hire, train, and supervise its police officers, as well as the deliberate indifference to, and failure to take action to stop, the widespread and on-going practice of arresting individuals and searching their persons and property without probable cause by the police officers of the Los Angeles Sheriff's Department, in the City of Lakewood, County of Los Angeles.

**COUNT III: CLAIM OF PHILIP BIKLE PURSUANT TO 42 U.S.C. 1983 (MONELL CUSTOM OR PRACTICE) AGAINST THE LOS ANGELES SHERIFF'S DEPARTMENT, CITY OF LAKEWOOD, AND THE COUNTY OF LOS ANGELES FOR FAILURE TO PROPERLY HIRE, TRAIN, AND SUPERVISE ITS POLICE OFFICERS WITH RESPECT TO THE 4TH AMENDMENT**

70. Plaintiff re-alleges and restates paragraphs 1 through 67 as if fully set forth herein.

71. The acts of the Defendant Los Angeles Sheriff's Department Officer constitutes a long standing, pervasive pattern, of lawlessness including the use of unlawful searches and arrests and false claims.

72. It is the policy of the Los Angeles Sheriff's Department, the City of Lakewood, and the County of Los Angeles, to inadequately train and supervise their police officers, including the defendant officer, and thereby fail to discourage constitutional violations on the part of the officer.

Complaint                                                                                           15

73.  As a result of the above described policies and customs, Defendant Officer Santos believed his actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

74.  The above described policies and customs demonstrated a deliberate indifference on the part of the policy makers in the Los Angeles Sheriff's Department, the City of Lakewood, and the County of Los Angeles, to the constitutional rights of persons within the County and were the cause of the violation of Plaintiff Philip Bikle's federal and state constitutional rights.

**COUNT IV:  CLAIM OF PHILIP BIKLE AGAINST DEFENDANT OFFICER SANTOS FOR VIOLATION OF THE PLAINTIFF'S NINTH AMENDMENT RIGHTS (RIGHT TO TRAVEL)**

75.  Plaintiff re-alleges and restates paragraphs 1 through 73 as if fully set forth herein.

76.  On October 24, 2011, Plaintiff had the right pursuant to the Ninth Amendment to the United States Constitution to be free to travel about, via any ordinary means of the day, which includes an automobile. This right was a clearly established right at the time that the Plaintiff was unreasonably arrested. That right was violated by the Defendant Officer Santos while acting under color of state and municipal law.

77.  On October 24, 2011, while acting under the color of state and local law, the Defendant Officer knowingly deprived plaintiff of his right to travel, via automobile, by treating Plaintiff as a member of the class of persons whose occupations call for regulation and whom are required to pay a license tax for the privilege of operating a motor vehicle for hire. Defendant Officer threatened the Plaintiff with custodial arrest and property seizure if he saw the Plaintiff using his automobile, even though Plaintiff had indicated to the Officer that the Plaintiff was not a member of the class of persons so regulated by the legislature. Defendant Officer knowingly issued a falsified report and charged Plaintiff with alleged crimes that he did not personally observe and Defendant Officer was given

Complaint                                          16

notice that the Plaintiff was not a member of the class of regulated persons of which the criminal charges were applicable.

78.   As a direct result thereof, Plaintiff was caused to suffer the following injuries and damages:

     (a) Physical pain and suffering, including but not limited to exacerbation of preexisting conditions;

     (b) Emotional pain and suffering, including but not limited to stress and anxiety;

     (c) A substantial loss of the enjoyment of life;

     (d) humiliation;

     (e) impairment of relationships;

     (f) Insomnia and nightmares;

     (g) Chronic headaches;

     (h) Development of fears and phobias;

79.   The Acts of the Defendant officer constitute a violation of the clearly established right to travel. The right to travel is protected by the Ninth Amendment.

**COUNT V:   CLAIM OF PHILIP BIKLE AGAINST DEFENDANT OFFICER SANTOS FOR VIOLATION OF THE PLAINTIFF'S 9th AMENDMENT RIGHTS PURSUANT TO 42 U.S.C. SECTION 1983**

80.   Plaintiff re-alleges and restates paragraphs 1 through 78 as if fully set forth herein.

81.   At the time that he was arrested, Plaintiff had the Constitutional Rights, pursuant to 42 U.S.C. 1983 and the 9th Amendment to the United States Constitution, to freely travel about, via any ordinary means of the day, which includes an automobile. This right was a clearly established right at the time that the plaintiff was arrested.

82.   On October 24, 2011, while acting under the color of state and local law, the Defendant Officer knowingly deprived plaintiff of his right to travel, via automobile, by treating Plaintiff as a member of the class of persons whose occupations call for regulation and whom are required to pay a license tax for the privilege of operating a motor vehicle for

hire. Defendant Officer threatened the Plaintiff with custodial arrest and property seizure if he saw the Plaintiff using his automobile, even though Plaintiff had indicated to the Officer that the Plaintiff was not a member of the class of persons so regulated by the legislature. Defendant Officer knowingly issued a falsified report and charged Plaintiff with alleged crimes that he did not personally observe and Defendant Officer was given notice that the Plaintiff was not a member of the class of regulated persons of which the criminal charges were applicable.

83.   The Officer therefore violated the clearly established Ninth Amendment right of the plaintiff to travel.

84.   The Officer's actions are the result of the custom, policy and practice of failing to properly hire, train, and supervise its police officers, as well as the deliberate indifference to, and failure to take action to stop, the widespread and on-going practice of arresting individuals without probable cause by the police officers of the Los Angeles Sheriff's Department, in the City of Lakewood, County of Los Angeles.

**COUNT VI:   CLAIM OF PHILIP BIKLE PURSUANT TO 42 U.S.C. 1983 (MONELL CUSTOM OR PRACTICE) AGAINST THE LOS ANGELES SHERIFF'S DEPARTMENT, CITY OF LAKEWOOD, AND LOS ANGELES COUNTY, FOR FAILURE TO PROPERLY HIRE, TRAIN, AND SUPERVISE ITS POLICE OFFICERS WITH RESPECT TO THE 9TH AMENDMENT**

85.   Plaintiff re-alleges and restates paragraphs 1 through 84 as if fully set forth herein.

86.   The acts of the Defendant Los Angeles Sheriff's Department Officer constitutes a long standing, pervasive pattern, of lawlessness including the use of false arrest and false allegations and deception while interacting with members of the class of persons who travel by automobile, on the public right-of-ways, as a matter of right. This class of persons are deceptively treated by Los Angeles Sheriff's Department Officers as if they are members of the class of persons who travel by automobile, on the public right-of-ways, as a matter of business in the transportation of persons or property for hire. The

latter class of persons is well established as being subject to regulation via the police powers of the State, while the former is well established as engaging in an unregulated liberty.

87.   It is the policy of the Los Angeles Sheriff's Department, City of Lakewood, and County of Los Angeles to inadequately train and supervise their police officers, including the defendant officer, and thereby fail to discourage further constitutional violations on the part of the officer.

88.   As a result of the above described policies and customs, Defendant Officer Santos believed his actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

89.   The above described policies and customs demonstrated a deliberate indifference on the part of the policy makers in the Los Angeles Sheriff's Department to the constitutional rights of persons within the County and were the cause of the violation of Plaintiff Philip Bikle's federal and state constitutional rights.

## COUNT VII: CLAIM OF PHILIP BIKLE AGAINST DEFENDANT OFFICERS SANTOS AND HAYES FOR FRAUD

90.   Plaintiff re-alleges and restates paragraphs 1 through 89 as if fully set forth herein.

91.   On November 3, 2011, while acting under the color of state and local law, Officer Santos committed mail fraud by sending a communication via USPS mail which conveyed to the Plaintiff that prosecution of criminal charges had been initiated against him by the People of the State of California; however, the authorities who are lawfully vested with the power to initiate prosecution of criminal causes of action in the name of the People of the State of California did not initiate prosecution against the Plaintiff. Officer Santos did knowingly and recklessly convey this information, with out regard for the truth. Officer Santos intended that the Plaintiff rely upon the conveyed information. Plaintiff relied upon the information until it was discovered to be false, at which point Plaintiff did every thing within his power, given his poor state of health, to inform Bellflower Court

1   employees of the fact that the authorities vested with the power to prosecute criminal

2   causes of action had not invoked the jurisdiction of the court.

3   92.   On December 15, 2011 and January 10, 2012, Officer Hayes committed mail fraud by

4   sending a communication via USPS mail which conveyed to the Plaintiff that prosecution

5   of criminal charges had been initiated by the People of the State of California; however,

6   the authorities who are lawfully vested with the power to initiate prosecution of criminal

7   causes of action in the name of the People of the State of California did not initiate

8   prosecution against the Plaintiff. Officer Hayes did knowingly and recklessly convey this

9   information, with out regard for the truth. Officer Hayes intended that the Plaintiff rely

10   upon the conveyed information. Plaintiff relied upon the information until it was

11   discovered to be false, at which point Plaintiff did every thing within his power, given his

12   poor state of health, to inform Bellflower Court employees of the fact that `the authorities

13   vested with the power to prosecute criminal causes of action had not invoked the

14   jurisdiction of the court.

15   93.   As a direct result thereof, Plaintiff was caused to suffer the following injuries and

16   damages:

17         (a) Physical pain and suffering, including but not limited to exacerbation of

18         preexisting conditions;

19         (b) Emotional pain and suffering,including but not limited to stress and anxiety;

20         (c) A substantial loss of the enjoyment of life;

21         (d) humiliation;

22         (e) impairment of relationships;

23         (f) Insomnia and nightmares;

24         (g) Chronic headaches;

25         (h) Development of fears and phobias;

26   94.   Plaintiff's reliance upon the Defendant Officers misrepresentation of facts was a

27   substantial factor in causing Plaintiff harm.

28   95.   The Officers actions are the result of the custom, policy and practice of failing to

      properly hire, train, and supervise its police officers, as well as the deliberate indifference

1    to, and failure to take action to stop, the widespread and on-going practice of fraud

2    against individuals by the police officers of the Los Angeles Sheriffs Department for the

3    County of Los Angeles.

4

5    **COUNT VIII:**       **CLAIM OF PHILIP BIKLE PURSUANT TO 42 U.S.C. 1983**

6                          **(MONELL CUSTOM OR PRACTICE) AGAINST THE LOS**

7                          **ANGELES SHERIFF'S DEPARTMENT, CITY OF LAKEWOOD,**

8                          **AND LOS ANGELES COUNTY FOR FAILURE TO PROPERLY**

9                          **HIRE, TRAIN, AND SUPERVISE ITS POLICE OFFICERS**

10                         **(POLICIES PROMOTING FRAUD)**

11

12   96.   Plaintiff re-alleges and restates paragraphs 1 through 95 as if fully set forth herein.

13   97.   The acts of the Defendant Los Angeles Sheriff's Department Officers constitute a long

14         standing, pervasive pattern, of lawlessness including the use of fraud and deception while

15         unlawfully initiating prosecution against members of the public.

16   98.   It is the policy of the Los Angeles Sheriff's Department, City of Lakewood, and County

17         of Los Angeles to inadequately train and supervise their police officers, including the

18         defendant officer, and thereby fail to discourage further constitutional violations on the

19         part of the officer.

20   99.   As a result of the above described policies and customs, Defendant Officers Santos and

21         Hayes believed their actions would not be properly monitored by supervisory officers and

22         that misconduct would not be investigated or sanctioned, but would be tolerated.

23   100.  The above described policies and customs demonstrated a deliberate indifference on the

24         part of the policy makers in the Los Angeles Sheriff's Department, City of Lakewood,

25         and County of Los Angeles to the constitutional rights of persons within the County and

26         were the cause of the violation of Plaintiff Philip Bikle's federal and state constitutional

27         rights.

28

COUNT IX:  CLAIM OF PHILIP BIKLE AGAINST DEFENDANT OFFICERS
SANTOS, HAYES, DOE1, AND DOE2 FOR VIOLATION OF THE
PLAINTIFF'S FIFTH AMENDMENT RIGHTS (DUE PROCESS)

101.  Plaintiff re-alleges and restates paragraphs 1 through 100 as if fully set forth herein.

102.  On October 24, 2011, through to the present day, Plaintiff had the right pursuant to the Fifth Amendment to the United States Constitution to not be deprived of liberty without due process of law. This right was a clearly established right at the time that the Plaintiff was: falsely arrested, threatened with arrest, threatened with confiscation of my property, subjected to mail fraud, and made a defendant for alleged criminal causes of action by the initiation of unauthorized prosecution. That right was violated by the Defendant Officers Santos, Hayes, DOE1, and DOE2 while acting under color of state and municipal law.

103.  The Defendants actions of filing false allegations, threatening arrest, false arrest,  threats of taking my personal property, mail fraud, and unauthorized initiation of prosecution of criminal causes of action have deprived me of my liberty to do as I please, with my time. I have been forced to allocate huge chunks of my free time to research, successfully defend, and attempt to obtain compensation for damages. I can not get back any of the time that I spent unable to use my automobile, defending myself and attempting to be made whole again. This deprivation of my liberty occurred with out due process of law.

104.  The actions of both Officers are not random. The actions are part of the policies and customs of  the Los Angeles Sheriff's Department, City of Lakewood, and County of Los Angeles. These actions were foreseeable. The Los Angeles RISK management office denied the Plaintiff's claims for damages as a result of the officers' actions. The State's statutory procedure for filing claims is inadequate as an individual only has 6 months to file a claim. If a claim is not filed within 6 months then the individual must request permission to file a late claim within the next 6 months and before 1 year passes since the incident causing damages occurred. The initial incident causing damages occurred on October 24, 2011. Plaintiff's initial claim of October 23, 2012 against Officers Santos and Hayes and the LASD was filed after 6 months, but just before the 1 year deadline.

Plaintiff received a notice on October 25, 2012, that I had to ask for permission to file the claim since it was past the 6 month deadline; however, at this point it was past 1 year since the incident occurred so Plaintiff could not file any claims for the damages which occurred on October 24, 2011. Plaintiff filed a claim against Hayes with a request to file a late claim on December 15, 2012, with an affidavit of truth providing details as to why Plaintiff was attempting to file a late claim. In this statement Plaintiff described an on-going physical injury, which has made every thing difficult to do. Some things physical things can not be done at all anymore, and the pain has had effects on Plaintiff's ability to think. Plaintiff detailed how he had to leave his Master's program, just shy of completion due to the physical and mental effects of the severe hamstring and adductor tendonapathy. Plaintiff described experiencing a mental fog which involves mental lethargy. Plaintiff included a Medical Narrative from the federal workers compensation case that had been opened in 2004 for the injury. In addition, Plaintiff described that he was not trained in law and that when he did some preliminary research regarding personal damages it seemed clear that there was one year to file a claim. At that point, Plaintiff put all attention to defending against the perversion of justice which put him in the position of trying to get a Court Commissioner and Judge to recognize that their jurisdiction had not been invoked and that an authorized individual had not filed any criminal causes of action with the court. The unlawful actions kept stacking up in the Superior Court of California, at Bellflower and the Plaintiff was not able to get the alleged case dropped against him until August 21, 2012. At that point the Plaintiff began to work on civil complaints. Plaintiff found out through an associate that a claim must be filed with the Los Angeles Office of RISK management before any civil complaint's could be filed in court. This took Plaintiff by surprise, but Plaintiff filed a claim with said office, only to receive the response on October 25, 2012 indicating that I had to ask for permission to file the claim. The claim of December 14, 2012 was denied after explaining all of the above. The RISK management office claimed that I did not meet the requirements to be allowed to file a late claim. California Government code 911.6 states in part:

"(b) The board shall grant the application where one or more of the

following is applicable:

(1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect and the public entity was not prejudiced in its defense of the claim by the failure to present the claim within the time specified in Section 911.2.

(3) The person who sustained the alleged injury, damage or loss was physically or mentally incapacitated during all of the time specified in Section 911.2 for the presentation of the claim and by reason of such disability failed to present a claim during such time."

The RISK management office utilized it's authority to grant or deny permission to file a late claim to unlawfully deny the Plaintiff's claim and thereby avoid liability.

105.   As a direct result of the actions of Officers Santos, Hayes, DOE1, and DOE2; Plaintiff was caused to suffer the following injuries and damages:

(a) Physical pain and suffering, including but not limited to exacerbation of preexisting conditions;

(b) Emotional pain and suffering,including but not limited to stress and anxiety;

(c) A substantial loss of the enjoyment of life;

(d) humiliation;

(e) impairment of relationships;

(f) Insomnia and nightmares;

(g) Chronic headaches;

(h) Development of fears and phobias;

106.   The Officers actions are the result of the custom, policy and practice of failing to properly hire, train, and supervise its police officers, as well as the deliberate indifference to, and failure to take action to stop, the widespread and on-going practice of fraud against individuals by the police officers of the Los Angeles Sheriffs Department for the County of Los Angeles.

**COUNT X:   CLAIM OF PHILIP BIKLE PURSUANT TO 42 U.S.C. 1983 (MONELL CUSTOM OR PRACTICE) AGAINST THE LOS ANGELES SHERIFF'S DEPARTMENT, CITY OF LAKEWOOD, AND LOS ANGELES COUNTY FOR FAILURE TO PROPERLY HIRE, TRAIN, AND SUPERVISE ITS POLICE OFFICERS  (DUE PROCESS)**

107.   Plaintiff re-alleges and restates paragraphs 1 through 106 as if fully set forth herein.

108.   The acts of the Defendant Los Angeles Sheriff's Department Officers constitute a long standing, pervasive pattern, of lawlessness including the deprivation of liberties and use of property while failing to provide due process to members of the public.

109.   It is the policy of the Los Angeles Sheriff's Department, City of Lakewood, and County of Los Angeles to inadequately train and supervise their police officers, including the defendant officer, and thereby fail to discourage further constitutional violations on the part of the officer.

110.   As a result of the above described policies and customs, Defendant Officers Santos and Hayes believed their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

111.   The above described policies and customs demonstrated a deliberate indifference on the part of the policy makers in the Los Angeles Sheriff's Department, City of Lakewood, and County of Los Angeles to the constitutional rights of persons within the County and were the cause of the violation of Plaintiff Philip Bikle's federal and state constitutional rights.

**COUNT XI:  CLAIM OF PHILIP BIKLE AGAINST DEFENDANT OFFICERS SANTOS, HAYES, DOE1, AND DOE2 FOR VIOLATION OF THE PLAINTIFF'S 14th AMENDMENT RIGHTS PURSUANT TO 42 U.S.C. SECTION 1985(3) (CONSPIRACY FOR  THE PURPOSE OF DEPRIVING PERSONS OF RIGHTS AND PRIVILEGES)**

112.   Plaintiff re-alleges and restates paragraphs 1 through 111 as if fully set forth herein.

113.   The Defendants had a duty to cause no injury and to up hold their oaths of office. The defendants caused injury and violated their oaths of office.

114.   The acts of Defendants Santos, Hayes, DOE1, and DOE2 were systematic and foreseeable. The actions of the Defendants are part of an ongoing conspiracy to defraud persons who happen to get caught up in any alleged traffic related matter. The Defendants actions are part of a stream lined mechanism, which acts to facilitate the processing of as many persons as is possible, through what is portrayed as lawful process, but which is in reality fraudulent. The end result is that more money can be rapidly acquired as the rights of the persons who appear in court are thoroughly trampled.

115.   The actions of the defendants effect the entire class of persons who travel via automobile, on the right-of-ways, as a matter of right, and who are not engaging in the business of transportation of persons or property for hire. Plaintiff happens to be a member of this class of persons. The defendants actions deprive the Plaintiff and members of this class of persons of the ninth amendment right to travel using automobile. The defendants actions constitute threats and coercion with the intent of forcing persons of this class to give up their right to travel via automobile, with out a business transportation license, even though the California Legislature clearly exempted the class of persons who use automobiles with out engaging in the business of transportation and the California Supreme Court has upheld this differences between classes, where one is engaging in a business activity which can be regulated by license and by the police powers of the State, and the other class is engaging in non-business activity which is not regulated by a license.

116.   As a direct result thereof, Plaintiff was caused to suffer the following injuries and damages:

(a) Physical pain and suffering, including but not limited to exacerbation of preexisting conditions;

(b) Emotional pain and suffering, including but not limited to stress and anxiety;

1    (c) A substantial loss of the enjoyment of life;

2    (d) humiliation;

3    (e) impairment of relationships;

4    (f) Insomnia and nightmares;

5    (g) Chronic headaches;

6    (h) Development of fears and phobias;

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands an injunction against the Defendants to halt all systemic actions of denial of due process and the systematic and fraudulent violations of the public right to travel on the right-of-ways, in an automobile, which includes being coerced into obtaining a license for the business of transportation to avoid being criminally charged with driving with out a license. It is not now, nor has it ever been, Plaintiff's intention, as a member of the class of persons who travel upon the right-of-ways, in an automobile, as a matter of right and not in commerce, to avoid paying a license tax for the privilege of engaging in business upon the right-of-ways. The Defendants have refused to acknowledge the distinction between the class of persons engaging in business upon the right-of-ways and the class of persons traveling upon the right-of-ways not engaging in the business of transportation. The California Legislature and Supreme Court have repeatedly delineated the differences between the two classes of persons. The Plaintiff and the general public will suffer irreparable harm by denial of this injunction. We will suffer insult, degradation, and deprivation of personhood by denial of this injunction. Plaintiff is likely to prevail in the causes of action laid forth against the Defendants. The facts in this complaint make Plaintiff's claims undeniable. Public interest will not be impaired by granting this injunction. The public interest will be impaired by denial of this injunction by public awareness that citizens can be victimized by those who declare themselves to be of a superior class. Plaintiff has no other remedy at law to protect himself from parties who it has been shown have conspired to deprive him of his fundamental rights. Denial of Plaintiff's injunction will cause the Plaintiff and the public to bear a greatly imbalanced harm. Plaintiff's harm will be loss of the right to travel via automobile, loss of due process rights, loss of the right to be free from unreasonable search and seizure, right to be free from tortious conduct (fraud), damage to reputation, and assault upon personhood. Denial of Plaintiff's injunction goes beyond economic injury. The costs to the court on error later corrected to the favor of Defendants is not as great  as the costs to the court for error later corrected in Plaintiff's favor. Granting Plaintiff's

request for injunction conserves the fundamental rights established in the United States Constitution no matter who prevails.

In addition, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages in an amount to be determined by Jury, for violation of his United States Constitutional rights;Plaintiff Bikle prays in addition for punitive damages in proper amounts found by the Jury against each of the individual defendants, in proportion to the egregiousness of their acts, who have been found to have participated in interference of the Plaintiff's rights; Plaintiff requests other and further relief as the court, or jurors, may deem reasonable and just under the circumstances; **Plaintiff demands Trial By Jury**.

Respectfully Submitted,

DATED: October 22, 2013:

PHILIP CHRISTIAN BIKLE

Pro Se

**VERIFICATION**

1

2  I, Philip Christian Bikle, do hereby declare under penalty of perjury that I have composed and

3  read the foregoing statements and the facts stated herein are true and correct, based on my direct

4  personal first hand knowledge, and entered this October 22, 2013.

5

6  Philip Christian Bikle

7

8  _____ Date: 10/22/13

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint                                    30